SEALED

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 2 3 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

# United States District Court

_____NORTHERN_____ DISTRICT OF _____TEXAS_____

In the Matter of the Search of
(Name, address or Brief description of person, property or premises to be searched)

1423 Daisy Drive, Lancaster, Texas

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

CASE NUMBER: 3:16mj 749-BK

I __Travis Schulze__ being duly sworn depose and say:

I am a(n) <u>Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA)</u> and have reason to believe that on the person of or **XX** on the property or premises known as

(SEE ATTACHMENT A).

in the __NORTHERN__ District of __TEXAS__ there is now concealed a certain person or property, namely (describe the person or property to be seized)

(SEE ATTACHMENT B).

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure) property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, and is, otherwise, criminally possessed, concerning a violation of Title __21__ United States code, Section(s) __846, 841(a)(1)__. The facts to support a finding of Probable Cause are as follows:

(SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT TRAVIS SCHULZE).

Continued on the attached sheet and made a part hereof.    **XX** Yes __ No

_____
Travis Schulze
**Special Agent, DEA**

Sworn to before me, and subscribed in my presence

September 23, 2016 at 10:36 a.m.       at       Dallas, Texas
Date and Time                                       City and State

**RENÉE HARRIS TOLIVER**
**United States Magistrate Judge**
Name and Title of Judicial Officer          Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES AT 1423 DAISY DRIVE, LANCASTER, TEXAS 75134 | **FILED UNDER SEAL**<br><br>NO: |

### AFFIDAVIT FOR SEARCH WARRANT

I, Travis Schulze, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

### Preface

1. The following affidavit is in support of a search warrant for **1423 Daisy Drive, Lancaster, Texas 75134**, which is located in the Dallas Division of the Northern District of Texas. Based on the facts and circumstances contained in this affidavit, there is probable cause to believe that this location is used to conceal fruits, instrumentalities, and evidence from the sale and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1), and 846.

2. The property at **1423 Daisy Drive, Lancaster, Texas** is described as a one-story, single-family residence with multi-colored brick located on the north side of Daisy Drive. A paved walkway leads from the curb to the white front door. The numbers "1423" are inscribed in the brick entrance above the front door. A driveway is located to the rear of the residence. A black, metal gate separates the residence driveway from the rear alleyway.

**Affidavit in Support of Application for Search Warrant - Page 1 of 17**

## Introduction

3. My name is Travis Schulze, and I am a Special Agent with the United States Department of Justice Drug Enforcement Administration (DEA). I have been with the DEA since May 2012. I am assigned to the Dallas Field Division Office to investigate violations of federal drug statutes. I have conducted and participated in previous investigations of violations of the United States' drug laws, including violations of 21 U.S.C. §§ 841(a)(1), and 846. I am a United States law enforcement officer as defined in 18 U.S.C. § 2510(7), and I am empowered by law to conduct criminal investigations and to make arrests for federal felony offenses. In 2012, I attended the DEA basic training academy located in Quantico, Virginia. There, I received training in investigating drug offenses, drug conspiracies, and financial crimes. I also received training in undercover operations, electronic surveillance, interviewing confidential sources, executing searches and seizures, writing affidavits to support arrest and/or search warrants, recognizing drugs, exploiting communication devices, use of force, clandestine laboratory and laboratory procedures, internet investigation training, and asset forfeiture training. I have participated in the execution of numerous search warrants in the investigation of drug trafficking. These warrants covered the search of locations to include residences of drug traffickers and their co-conspirators/associates; drug manufacturing operations; stash houses used as storage and distribution points for controlled substances.

4. Based on my training and experience and based upon interviews with defendants, informants, and other witnesses and participants in drug trafficking activity, I

am familiar with the ways that drug traffickers conduct their business. My familiarity includes: the means and methods drug traffickers use to import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions. I also am familiar with how drug traffickers conceal, convert, transmit, and transport their drug proceeds, including but not limited to, and using carriers to transport currency and proceeds.

5. Based on my training, experience, and my participation in this investigation and other investigations involving individuals engaged in drug trafficking and/or money laundering, I know individuals often maintain documents and financial records for long periods of time, particularly when they are involved in ongoing criminal conduct over a long period of time. I know drug traffickers often keep drug ledgers to track money owed to suppliers as well as money owed to them by customers. These documents or records are often in the form of written notes but can be electronic files stored in computer or hard drive.

6. I know from my training and experience that individuals who amass proceeds from illegal activities routinely attempt to further that conduct and/or conceal the existence and source of their funds by engaging in financial transactions with domestic and foreign institutions, and others, through various financial instruments. These financial instruments include but are not limited to cash, cashier's checks, money drafts, traveler's checks, and wire transfers. Records of such instruments are often maintained at the individual's residence and/or place of business.

7.     I have personally participated in the investigation below and I am familiar with the facts and circumstances through my personal participation, from discussions with other DEA agents and law enforcement officers, and from reviewing records and reports relating to the investigation. Because this affidavit is for the limited purpose of securing a warrant authorizing the search of the location described in Attachment A, I have not included details of every aspect of the investigation.

## Background of the Investigation

8.     Since June 2016, DEA Dallas agents have investigated a heroin distributor in the Lancaster area named Gabriel Reyes, aka "Payaso." Based on information from a Confidential Source (CS), Reyes maintains kilogram quantities of heroin at his residence located at **1423 Daisy Drive, Lancaster, Texas**. According to the CS, Reyes charges $1,050 for an ounce of heroin. During this investigation, agents confirmed, through surveillance, that Reyes resides at **1423 Daisy Drive**. The CS has been a DEA CS for approximately four months. The CS's information has been corroborated through prior undercover drug purchases, surveillance, and evidence from other drug investigations. The CS has been proven credible and reliable.

9.     On September 20, 2016, agents directed the CS to contact Reyes and ask to buy an ounce of heroin. The CS placed a recorded call to Reyes. During the call, Reyes agreed to sell the CS heroin. Reyes directed the CS to contact him when the CS was ready to purchase the heroin, and that they would meet at **1423 Daisy Drive**. The CS replied that he/she planned to purchase the heroin the next day.

Affidavit in Support of Application for Search Warrant - Page 4 of 17

10. On September 21, 2016, agents met the CS at a neutral location. At agents' direction, the CS placed a recorded call to Reyes and coordinated the purchase of an ounce of heroin. Reyes directed the CS to meet in an hour. Agents established surveillance at **1423 Daisy Drive**. In the rear driveway, surveillance observed a 2004 Chevrolet truck bearing Texas license plate FJB-0357. The vehicle was found registered to Gabriel Reyes at **1423 Daisy Drive, Lancaster, Texas**. At a neutral location, agents searched the CS and CS's vehicle and found no illegal contraband or extra currency. Agents gave the CS $1,050 to purchase the ounce of heroin from Reyes. Agents also gave the CS a recording device to record the transaction. From the neutral location, agents followed the CS directly to **1423 Daisy Drive**.

11. Surveillance observed the CS park and enter the front door. The CS's recording device indicated that the CS met Reyes inside. After several minutes, surveillance observed the CS depart the residence. Agents followed the CS to a neutral location.

12. At the neutral location, agents met the CS. The CS gave the agents a clear plastic bag containing a black, rock-like substance. A field test of the substance indicated a positive response for heroin. Agents searched the CS and CS's vehicle and found no illegal contraband or extra currency. The CS advised he/she met Reyes inside the residence. During the meeting, Reyes gave the CS the clear plastic bag containing the black substance. The CS then paid Reyes the $1,050. The CS stated Reyes discussed future heroin sales and quoted the CS a price of $34,000 for a kilogram of black tar heroin.

Affidavit in Support of Application for Search Warrant - Page 5 of 17

13. I believe, that based on the totality of the information in this affidavit, that there is probable cause to believe that on the premises of **1423 Daisy Drive, Lancaster, Texas**, more particularly described in Attachment A, that there is evidence of crime, fruits of crime, contraband, and other items illegally possessed in violation of federal laws, including 21 U.S.C. §§ 841, 846, as stated in Attachment B.

Travis Schulze
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this the 23rd day of September, 2016.

RENEE H. TOLIVER
United States Magistrate Judge
Northern District of Texas

## ATTACHMENT A
## LOCATION TO BE SEARCHED

**1423 Daisy Drive, Lancaster, Texas 75134**

This property is described as a one-story, single-family residence with multi-colored brick located on the north side of Daisy Drive. A paved walkway leads from the curb to the white front door. The numbers "1423" are inscribed in the brick entrance above the front door. A driveway is located to the rear of the residence. A black, metal gate separates the residence driveway from the rear alleyway.

**Attachment A – Solo Page**

## ATTACHMENT B
## ITEMS TO BE SEIZED

1. Controlled substances, specifically heroin;

2. Drug distribution paraphernalia including, but not limited to: scales, plastic baggies, wrapping material, paper or plastic bundles, zip lock bags;

3. Devices used to communicate with other drug traffickers or buyers including cellular telephones and pagers; electronic equipment used for counter-surveillance such as scanners, police radios or monitors, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing same;

4. Documents associated with drug trafficking including pay-owe sheets, buyer lists, seller lists, ledgers, records of sales, records of expenditures made to purchase drugs or chemicals and apparatus used to manufacture drugs, buyer lists, telephone lists, address books (written or electronic / digital media);

5. Large amounts of currency (exceeding $1,000) or readily transported assets which are used as cash equivalents (cashiers' checks, bearer bonds, gold, diamonds, precious jewels, etc.);

6. Materials evidencing the receipt of large amounts of cash including bank statements and related records, passbooks, letters of credit, money drafts, cashier's checks, bank checks, checkbooks, tax returns, loan statements, tax return work papers, escrow files, Forms 1099, wire transfer records, money counter machines, and other items evidencing the obtaining, secreting, transfer, concealment, and expenditure of money related to drug trafficking activities;

7. Bank and other financial institution records, showing acquisition, conversion, movement, secreting, transfer and disbursement of United States and foreign currency

8. Materials evidencing expenditure of drug trafficking proceeds including, purchase of large assets, including digital image storage devices, records of real estate or securities transactions, escrow files, wire transfer records, automobiles or trucks purchased with case or cash equivalents;

9. Photographs, negatives, video tapes, films, undeveloped film and the contents therein, and slides depicting the subjects of the investigation and their criminal

associates, (showing association with the associates, depicting their assets or depicting controlled dangerous substances;

10. Personal calendars, address and/or telephone books, rolodex indices and papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers, correspondences of the subjects of the investigation and their criminal associates, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

11. Weapons to include handguns, ammunition, rifles, shotguns, hand crafted guns, explosive devices, etc., in which there is no immediate appearance of legitimate use and of which may be used in conjunction with the distribution of controlled substances;

12. Indicia of possession of the place to be searched: including articles of personal property, such as personal identification, personal correspondence, delivery pouches, diaries, checkbooks, notes, photographs, keys, utility bills, receipts, personal telephone and address books, and video tapes, tending to establish the identity of the person or persons in control of the areas to be searched;

13. Books, records, ledgers, journals, statements, receipts, invoices, billings, financial statements, balance sheets, notes and work papers;

14. Credit and debit card records, including records of purchases, withdrawals, deposits and cash advances made with credit and debit cards, and including statements and receipts;

15. Records of expenditures including payments, receipts, invoices, and statements;

16. Prepaid debits cards and gift cards and any documents associated with such cards;

17. Keys to show ownership for storage facilities, businesses, locked containers, cabinets, safes, safe deposit boxes, conveyances and/or other residences;

18. Electronic devices which are capable of storing, analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data that is described above. Cellular telephones, PDAs, and other smart phones and their storage cards.